IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ANTOINETTE HITE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:24-cv-01806-MHH |
| | ) |
| **TEC-MASTERS, INC.,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Antoinette Hite has sued her former employer, Tec-Masters, Inc., for racial discrimination and retaliation under 42 U.S.C. § 1981.  (Doc. 12).  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Tec-Masters has moved to dismiss Ms. Hite's claims.  (Doc. 13).

\*\*\*

Rule 12(b)(6) allows a defendant to move to dismiss claims within a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED.

1

R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In deciding a Rule 12(b)(6) motion to dismiss, a court must view the allegations in a complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). A court must accept well-pleaded facts as true. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). Accordingly, the Court views Ms. Hite's factual allegations in the light most favorable to her.

***

Ms. Hite, an African American woman, worked as the Human Resources Manager for Tec-Masters from January 3, 2023, until July 11, 2023. (Doc. 12, pp. 2, 4, ¶¶ 7, 8, 15). As HR Manager, Ms. Hite "process[ed] new hires, terminations, salary increases, benefits, and maintain[ed] company policies." (Doc. 12, p. 2, ¶ 8). Ms. Hite reported to COO Carol Frazier. (Doc. 12, p. 2, ¶ 9). Ms. Frazier "treat[ed] [Ms. Hite] as an intern" and instructed her to do "menial tasks," such as getting

coffee and retrieving mail. (Doc. 12, p. 2, ¶ 9). These tasks "were not part of [Ms. Hite's] job description." (Doc. 12, p. 2, ¶ 9). Ms. Frazier "did not treat any white employee in the HR department this way." (Doc. 12, p. 2, ¶ 9).

In May 2023, Ms. Hite learned that "less qualified white females were either being paid or offered a significantly higher salary . . . for the same or substantially similar position(s)." (Doc. 12, p. 3, ¶ 10). For example, Ms. Hite learned that Peyton Cook, a white female, "was offered the same position . . . for approximately $10,000.00 more per year" even though Ms. Cook was "less qualified and ha[d] less experience" than Ms. Hite. (Doc. 12, p. 3, ¶ 10).

Ms. Hite reported the pay discrepancy to Tec-Masters's CEO Marvin Carroll. (Doc. 12, p. 3, ¶ 11). Ms. Hite informed Mr. Carroll "that she felt discriminated against as an African-American female because she was made aware that people outside of her protected class were offered and/or paid more money than her for the same or similar position." (Doc. 12, p. 3, ¶ 11). Mr. Carroll "brushed off [Ms. Hite's] concern" and told her "she should 'humble herself.'" (Doc. 12, p. 3, ¶ 11). Ms. Hite also reported the pay discrepancy to Ms. Frazier. (Doc. 12, p. 3, ¶ 12). Ms. Frazier "laughed" and told Ms. Hite "you're not worth that." (Doc. 12, p. 3, ¶ 12). Ms. Hite "explained to [Ms.] Frazier that she took that statement to mean that she was not worth a higher salary due to her race." (Doc. 12, pp. 3–4, ¶ 12). Ms. Frazier did not respond to Ms. Hite's comment. (Doc. 12, p. 4, ¶ 12).

3

After Ms. Hite reported the pay discrepancy, Ms. Frazier began "micromanag[ing]" Ms. Hite. (Doc. 12, p. 4, ¶ 13). Ms. Frazier "isolated" Ms. Hite and "excluded" Ms. Hite from meetings she "should have been part of as an HR Manager." (Doc. 12, p. 4, ¶ 13). Ms. Frazier did not "subject any white employee to the same scrutiny or treatment." (Doc. 12, p. 4, ¶ 13). Ms. Hite repeatedly "expressed concerns to both [Ms.] Frazier and [Mr.] Carroll that she felt Ms. Frazier was treating her this way because she was an African-American woman and because she had engaged in protected activity." (Doc. 12, p. 4, ¶ 14). "[Ms.] Frazier and [Mr.] Carroll continually dismissed [Ms. Hite's] concerns." (Doc. 12, p. 4, ¶ 14).

In early July, fewer than two weeks after Ms. Hite's "final complaint," Tec-Masters terminated Ms. Hite's employment. (Doc. 12, p. 4, ¶ 15). Ms. Frazier and Mr. Carroll "authorized the termination." (Doc. 12, p. 4, ¶ 15). Tec-Masters told Ms. Hite that she was terminated due to "the elimination of her position." (Doc. 12, p. 4, ¶ 15). Ms. Hite was "the only individual whose position was eliminated" at Tec-Masters. (Doc. 12, p. 4, ¶ 15).

## III.

Section 1981 prohibits racial discrimination in the making and enforcement of employment contracts. 42 U.S.C. § 1981(a); *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1336 (11th Cir. 2024) (citation omitted). To state a plausible race discrimination claim under § 1981, a plaintiff must allege facts that establish that the

4

defendant employer's racially "discriminatory animus," an adverse employment action, and "a causal link between the two." *Woods v. Waste Pro of Fla., Inc.*, No. 21-12610, 2022 WL 2288683, at *2 (11th Cir. June 24, 2022) (quoting *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999)).[1]

Determining an employer's "*actual* reason" for an adverse employment action is "difficult." *Tynes v. Fla. Dep't Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023) (italics in *Tynes*). Courts sometimes rely on the *McDonnell Douglas* burden shifting framework to evaluate whether there is a casual link between an employer's discriminatory animus and an adverse employment action, *Tynes*, 88 F.4th at 944 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)), but a plaintiff does not have to establish a prima facie case of racial discrimination under *McDonnell Douglas* to survive a motion to dismiss, *Powers v. Sec'y U.S. Homeland Sec.*, 846 Fed. Appx. 754, 758 (11th Cir. 2021). Instead, "[t]o state a race-discrimination claim," a plaintiff "need only 'provide enough factual matter (taken as true) to suggest intentional race discrimination.'" *Powers*, 846 Fed. Appx. at 758 (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015)).

---

[1] Under Title VII and Section 1981, claims for race discrimination, retaliation, and hostile work environment "'have the same requirements of proof and utilize the same analytical framework.'" *Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1283, 1283 n.3 (11th Cir. 2018) (quotation and citation omitted).

With respect to her discrimination claim, Ms. Hite has plausibly alleged that she experienced an adverse employment action. "An employment action . . . is not adverse merely because the employee dislikes it or disagrees with it." *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998). Instead, an adverse employment action requires "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024)). Ms. Hite must demonstrate that the adverse action "left [her] worse off" but need not demonstrate that it caused "significant" harm. *See Muldrow*, 601 U.S. at 352, 354–55, 359 (reasoning that an employee transfer requiring a new uniform, more "administrative work," and more work on weekends caused "some injury").

Ms. Hite alleges that her supervisors required her to perform menial tasks that were not in her job description and paid her less than white employees holding the same position. *See McCabe v. Sharrett*, 12 F.3d 1558, 1564 (11th Cir. 1994) (holding that an employee suffered an adverse employment action when she was transferred to a job with less responsibility, more menial tasks, and less eligibility for salary raises). Likewise, Ms. Hite allegations permit the reasonable inference that discriminatory animus caused her adverse treatment. Ms. Hite does not have to identify a proper comparator at this stage because she has "provide[d] enough factual matter . . . to suggest intentional race discrimination." *Powers*, 846 Fed. Appx. at

6

758. Therefore, the Court denies Tec-Masters's motion to dismiss Ms. Hite's discrimination claim.

With respect to Ms. Hite's retaliation claim, § 1981 prohibits retaliation against an employee because she has "opposed any practice" made unlawful by § 1981. *See* 42 U.S.C. § 2000e-3(a).[2] To state a plausible claim for retaliation, a plaintiff must plausibly allege "(1) that she engaged in statutorily protected activity, (2) that she suffered an adverse action, and (3) that the adverse action was causally related to the protected activity." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134–35 (11th Cir. 2020) (citation omitted). A plaintiff engages in statutorily protected activity when she "mak[es] informal complaints" about an unlawful employment practice. *Gogel*, 967 F.3d at 1144. A plaintiff does not have to "prove that the conduct complained of was actually unlawful." *Herron-Williams v. Alabama State Univ.*, 805 Fed. Appx. 622, 632 (11th Cir. 2020) (citing *Furcron v. Mail Ctrs. Plus*, LLC, 843 F.3d 1295, 1310 (11th Cir. 2016)). Instead, conduct is "considered protected activity" if the plaintiff "'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Herron-Williams*, 805 Fed. Appx. at 631 (*quoting Furcron*, 843 F.3d at 1311). "The objective

---

[2] As with discrimination claims, retaliation claims under 42 U.S.C. § 1981 "and are analyzed under the same framework as Title VII claims." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134–35 (11th Cir. 2020) (citing *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452–57 (2008)).

reasonableness" of an employee's belief that her employer has engaged in an unlawful employment practice is "measured by reference to controlling substantive law." *Herron-Williams*, 805 Fed. Appx. at 632 (*quoting Furcron*, 843 F.3d at 1311).

Ms. Hite plausibly alleges that she opposed actions that she in good faith believed to be unlawful discrimination. Ms. Hite reported to Tec-Masters's CEO and her supervisor a disparity between her compensation and the compensation Tec-Masters offered to white HR candidates. (Doc. 12, p. 3, ¶¶ 11–12). And Ms. Hite reported that she felt she was being treated in a racially discriminatory manner because her supervisor micromanaged and critiqued her work more harshly than her white co-workers' work. (Doc. 12, p. 4, ¶ 14).

Ms. Hite's belief that the actions she opposed were unlawful was reasonable based on Eleventh Circuit precedent. It is well established that paying similarly situated employees differently because of race is an unlawful employment practice under § 1981. *See* 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation . . . because of such individual's race"); Palmer v. Stewart Cnty. Sch. Dist., 178 Fed. Appx. 999, 1002 (11th Cir. 2006) ("Where . . . a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 . . . the legal elements of the claims are identical") (quoting *Stallworth v. Shuler,* 777 F.2d 1431, 1433 (11th Cir. 1985)). It was reasonable for

8

Ms. Hite to conclude that it was unlawful for Tec-Masters to offer white employees who Tec-Masters wanted to hire as HR employees more than Tec-Masters paid her, given her superior experience. Even if the opposed conduct is not actually unlawful, the opposed conduct is "close enough" to an unlawful practice to qualify Ms. Hite's complaints to her superiors as a protected employment activity. *See Herron-Williams*, 805 Fed. Appx. at 632 (quoting *Clover v. Total Sys. Servs., Inc*., 176 F.3d 1346, 1351 (11th Cir. 1999)).

Ms. Hite has properly alleged that she suffered an adverse employment action because she alleges that she was terminated because of her opposition to Tec-Masters's allegedly discriminatory practices. See *Jefferson v. Sewon Am., Inc*., 891 F.3d 911, 924 (11th Cir. 2018) ("Termination is a materially adverse action."). And Ms. Hite's allegations plausibly establish a causal relationship between her protected activity and her termination from Tec-Masters. "Close temporal proximity between the protected activity and the adverse action may be sufficient to demonstrate that connection." *Vincent v. Jefferson Cnty. Bd. of Educ.*, 152 F.4th 1339, 1353 (11th Cir. 2025) (quotation omitted); *see Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1352 (11th Cir. 2022) (collecting cases). Ms. Hite alleges that Tec-Masters terminated her employment "less than two weeks" after she last complained about Tec-Masters's alleged discriminatory action. *See Donnellon v. Fruehauf Corp*., 794 F.2d 598, 601

9

(11th Cir. 1986) (holding that one month was sufficient circumstantial evidence of causation).

Therefore, the Court denies Tec-Masters's motion to dismiss Ms. Hite's retaliation claim.

IV.

For these reasons, the Court denies Tec-Masters's motion to dismiss Ms. Hite's second amended complaint. Pursuant to Section III of the Court's initial order governing this matter, (Doc. 2, pp. 4–6), within 14 days of the date of this order, the parties shall hold a Rule 26(f) meeting, file a joint report of their planning meeting, and email a joint proposed scheduling order to chambers.

The Clerk of Court shall please term Doc. 13.

**DONE** and **ORDERED** this February 27, 2026.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE